King, P. J.
This action was to enjoin the defendants from entering •upon certain lands to develop them for oil or gas, to which the plaintiff claims it has the right by a prior lease. The facts are, that on January 16, 1888, Philiph Barnhisel, the •owner of the land in question, entered into a contract with William Fleming, to whose rights the plaintiff has succeeded, 'to operate the premises described in the contract under the provisions of that contract, which provisions are substantially as follows: That in consideration of the payment of ■sixty dollars, by Fleming to the owner, and of the covenants and agreements contained in the contract, the owner ■of the land did grant to Fleming, all the oil and gas in and under the premises described, together with the right to ■enter upon the premises for the purpose of operating for •oil, gas or water; to erect such structures and machinery as *86 were necessary for the production and transportation of the product, provided that the owner should have the right to use the premises, excepting in so far as they might be needed by the second party. The contract further provided, that the grant first described, was made upon the following terms: That Fleming agreed to drill a well within thirteen months from the date of the contract, or thereafter pay to the owner, sixty dollars yearly, in advance, until the well was drilled, or the property granted re-conveyed to the first party. Then there is a provision, that if oil is found, that the owner should have one-eighth part of it; a provision that if gas is found, the owner should have one hundred and fifty dollars per year in advance, for each and every well from which gas is used off the premises; that the first party was to have free gas for use in stoves in residences; that the lessee should bury all pipe lines, and that no wells should be drilled nearer the house than three hundred feet. The seventh condition is as follows:
“Second party may, at any time, remove all his property and re-convey the premises hereby granted, and thereupon this instrument shall be null and void. This grant is made in lieu of the lease made to the Hancock Oil & Gas Co., dated February 10th, 1886, which lease is hereby cancelled. Unless a well shall be drilled on said land, within two years from this date, this contract shall become null and void, unless time further extended by first parties.”
This instrument was properly executed, filed for record, and recorded, as required by the statute, sec. 4112a. Before the expiration of the two years named in the lease, the parties to it, or rather, the plaintiff in place of Fleming, and the owner of the property, entered into a contract that in consideration of one hundred and twenty-five dollars, paid by the Gas Company,and the further consideration that the Company should furnish gas free to January 1st, 1890, and continue that through during the continuance of the exten *87 sion, the lessor consented to the extension of all the terms and conditions of the lease for one year, from January 16, 1890, or to January 16, 1891. This was signed by the owner of the land, December 11, 1889. On November 8, 1890, a further agreement in writing, was made on the original contract:
“In consideration of the sum of one hundred and fifty dollars, to me paid by the N. W. 0. Nat. Gas. Go., and their further agreement to continue to furnish me gas free of charge, for household use, as they are now doing, I consent to the extension of all the terms and conditions of the within lease, for one year, or until January 16, 1892, and agree that it shall be optional with the said company, whether they drill or continue to pay me the same sum in advance, from year to year hereafter, and continue my gas free.”
Neither of these instruments were recorded. The money stipulated to be paid, was paid by the plaintiff when it became due, or in advance, .until the last payment that was due on or about January 16, 1895. The Gas Company also furnished the gas to the residence of the owner free of charge, and continued to furnish that, until after the commencement of this action. The Company did not drill any well under this lease. On January 16, 1896, or within a few days theréafter, the Company tendered, or offered the owners, the one hundred and fifty dollars, stipulated in the last written endorsement on the contract, and the owner refused to receive it, and on the 4th of February, 1896, made another lease, or contract, for the right to operate these premises for oil and gas with the defendants, and shortly after the execution of that lease; the defendants entered upon the premises and drew in material, and soon after began the erection of what is called a rig, and were about to drill when this action was commenced on the 8th day of April, 1896, to enjoin them from drilling or operating, and from coming on the premises for that purpose.
*88 One question of fact arises, as to whether or not a tender was made. We think the evidence is sufficient to show that the tender of one hundred and fifty dollars was made. It is more doubtful as to the date upon which it was made, but we are disposed to hold that the evidence of the witness who testified to offering one hundred and fifty dollars, on the 16th of January, 1896, to the owner, is entitled to belief. It is denied generally by the owner, that any such offer was made. The witness testified it was made to him on the road, in the presence of his wife. He gives a number of facts which would seem to show, at least, that he could not be mistaken as to the date, and the wife of the owner is called as a witness, and she does not testify about the transaction at all. The owner simply says, nothing of the kind ever occurred, but tnat some days later, and as he puts it, on the 25th of January, another gentleman called at his residence, and did offer him one hundred and fifty dollars, which he refused. There is no dispute betweer the parties that this other gentleman did call and offer the one hundred and fifty dollars. He testified he made this offer on the 17th of January, or the next day after it was claimed that the first offer was made in the road. Those witnesses may be mistaken about the date, but we are inclined to believe the testimony of the witness who made the offer on the 16th. It may not be very material whether the offer was made on the 16th, 17th,or 25th.
It is claimed on the part of the defendants,that this lease ended on the 16th of January, 1896, at the election of the owner; that he might thereafter treat it as if it were at an end; that there had been no development of the property, and he might then lease it to others, and that in doing so on the 4th of February, he did what he had a perfect right to do.
The terms of this lease are somewhat different in some respects from others that have come before this court. It *89 was executed to develop the property for gas, in 1888, before there was any oil development in that neighborhood, and provides for an absolute grant of ail the oil and gas underlying the property, and if it ended at the place where the conditions begin, it would be a sale of all the oil and gas m these premises, with the right to enter at all times to take it out, and upon the consideration of the payment of sixty dollars. Now, the first of these conditions upon which that grant is made, and upon which it rests, is that the second party shall drill a well within thirteen months from the date of the contract, or pay sixty dollars a year in advance, until a well is drilled or the property re-conveyed. If the contract stopped there, it would amount, not only to a grant of the oil and gas,, but to a perpetual license to enter and develop the property, and the obligation would rest upon the grantee in this contract, to either drill a well in thirteen months, or pay sixty dollars a year in advance, or re-convey the premises; but a subsequent provision, which is the printed part of the seventh condition, provides, that the “Second party may, at any time, remove all his property and re-convey the premises hereby granted, and thereupon this instrument shall be null and void.” With the seventh and first conditions of this grant standing there, and nothing following, the conclusion would be, that a perpetual license or right was granted to the company to enter upon these premises and take this oil and gas, or to pay sixty dollars a year in advance, or, if they desired to abandon, or to get rid of the contract, they must re-convey the premises, and if they failed to,re-convey and failed to pay or drill, it is clear, that under this contract the owner would have ft right of action against them at the beginning of each and every year, until the contract had been rescinded or property abandoned, for the recovery of the sixty dollars. This is clearly settled in the case of the Woodland Oil Company v. Crawford, in 55 Ohio St., page 165, which was a *90 lease somewhat different in its terms as to the grant from this, but which contained in it a provision,called a forfeiture clause, reading as follows: — “And a failure on the part of the second party to complete such well, or wells, as above specified, or instead thereof, to pay the rental as above provided, shall render this lease and agreement null and void, together with all rights and claims, and not to be binding on either, party, and not to be revived without the consent of both parties hereto, in writing;’’ and it was there held, that upon a failure to drill a well as stipulated in the contract, with a condition of forfeiture which was in favor of the grantor only, that the obligation to pay attached, and that an action could be maintained for the rental. Another addition to the alternative condition in this lease, of drilling a well or paying, is, that the premises are to be re-coneyed; so that if the company desired to annul this contract, and release themselves without drilling, they must re-convey the premises. That is the only way they can abandon these premises., Until they do that, there is a continuous obligation resting upon them to pay sixty dollars a year in advance, and at the beginning of each year that would become due.
Now, the conditions which I have read, were incorporated in the lease on record, but in addition, there was written on the lease, further, that unless a well be drilled on the land within two years from the date of the contract, it should become null and void, unless time be further ex« tended by first parties. So the lease, then, by its terms, weighing and considering them all together, was to become null and void at the expiration of two years from its date, subject however, to the condition that the first party might extend the time. Now, it is clear from the evidence, that .before the two years expired,the first party did agree to extend the time for one year. They stipulated, and it was agreed to by the company for a different consideration, but *91 that is of no moment. That was paid and accepted, and so the conditions of the contract were extended for one year. What conditions? The right to enter upon these premises and drill, and all the conditions of the contract were extended for one year; not only the right to enter upon the premises, but the right' to refrain from drilling for the consideration of one hundred and twenty-five dollars. Before the expiration of that year, a new contractor agreement was made, which amounted to an extension so far as the first parties were concerned, of all the rights of the parties,— all the conditions and terms of the original contract for one year longer, upon a still different consideration. That stipulation is in a little different language than the first, and contains perhaps, some additional provisiops. I have said, that the first memorandum stipulates that the Company should furnish gas, which they did, a condition not in the original contract. Then, before the expiration of that year, it was agreed that for one'hundred and fifty dollars, and the furnishing of gas free of charge, as they were then doing, the first party consented to the extension of all of the terms and conditions of the lease for one year, or until January 16, 1892, and agreed that it was to be optional with the company whether they drilled or continued to pay the rental named in advance from year to year. Now, they had that right in the original lease to continue to pay, at least for two years, and they had that right under the lease to pay longer if the first party consented to an extension of the time. The payment dí the sixty dollars named in the original lease, would continue this lease as long as the first party agreed to continue it without including the obligation in the contract to drill the property at all. That is perhaps more clearly set forth in the last memorandum made; that upon payment of one hundred and fifty dollars, in addition, it shall be optional with them whether they shall drill or pay, and it may continue indefinitely. Now, the Gas *92 Company fulfilled that obligation. They paid, and they paid in January, 1895, not exercising their right to drill through that year, and that gave them the right, we think clearly, to refrain from operating these premises during that year. It was the acceptance of one hundred and fifty dollars by the owner of the property, in lieu of the fulfillment of the obligation to drill a well, or to operate this property as it ought to be operated. It relieved the lessee of the obligation to drill, and was accepted by the lessor in the place of his right to insist on operations, and that was the condition of affairs up to the 16th of January, 1896. The parties had rested upon that agreement and understanding, up to the 16th of January, 1896, and on that date the Gas Company, acting under, and pursuant to the provisions of this lease, made a tender to the owner of the one hundred and fifty dollars, stipulated in the contract. Now, whether he was bound to receive it or not, is, we think, unnecessary to decide, and we are not inclined to go further than is necessary to go in this case; but at least, we ought to say, that if he intended to treat this contract as at an end, he should have in some manner notified the Company that he should treat it at an end so far as the payment of the money was concerned. The owner testifies, that he said he would not receive this money,and wanted his property developed. If he said that, and it should be treated as a notice to the Company that he refused further to continue this agreement, that would give, as we have held, heretofore, the Company the right to a reasonable time under their lease to enter upon these premises and properly develop them. Probably the obligation would have required them to sink off-setting wells, but that is neither here nor there, as nothing of that kind was needed or required, on the 16th of January, 1896.
If we are so far correct, then the Gas Company had at least a reasonable time, after January 16, 1896, to enter upon and into the possession of the premises, and drill for *93 oil and gas, and we do not tbink that reasonable time had elapsed before he granted all these rights away to the ¡defendants in this case, and their rights attached. It is said that plaintiff delayed; but it would be unreasonable to hold that they were bound to drill pending this action. The litigation was pending, and we do not think it was bound to drill while the defendants were asserting a right to the possession of the property. It could wait until its rights were determined before it expended more money.
A question is raised here, whether those stipulations on the back of the lease ought to have been recorded; but we think the language of the recording statute does not fairly bring those terms within it. As has been before stated, this lease as originally made, until you reach the' clause providing that it shall become null and void at the end of two years, is a perpetual grant to enter there, and even the force and effect of that limitation was done away with by the provision, that it shall not become null and void if time shall be further extended. That was in the lease as recorded. New, the statute provides, that “all leases and licenses, and assignments thereof, or of any interest therein, heretofore executed, given or made, for, upon, or concerning the lands or tenements in this state, whereby any right is given or granted to operate, or to sink or drill wells thereon for natural gas and petroleum, or either, or pertaining thereto, shall be recorded in the lease-records in the office of the recorder, etc.”
“Leases, licenses and assignments thereof.” Assignment, certainly refers to assignment of leases and licenses, and of any interest therein heretofore executed. We think the proper construction of that clause is: “Assignment of any interest therein shall be recorded.” Now, the only effect so far as the question before the court is concerned of those writings on the back of the contract, is to extend the time of the contract for the benefit of the Gas Company. *94 That is the only effect of it, and there is nothing in the statute that would warrant us in holding they should be recorded. They are neither leases, licenses or assignments thereof, or of any interest therein. It is simply a stipula-, tion that the time within'which the first party had the right to insist upon the development is extended,and the contract as recorded, stipulates that time may be extended by the consent of the first party, and that consent,we take it, need not have been in writing unless it were an agreement that for some reason or other would be inimical to the Statute of Frauds. So far as the agreement itself is concerned, it would have been fulfilled if it were shown by the facts and circumstances that the owner consented to an extension of time. The provisions of the lease were notice that the lease was still subsisting, and that both parties had rights under it;' — the landlord having the right to insist on the payment of the sixty dollars rental, and the grantee the right so long as it had not been relinquished, abandoned, or forfeited, to enter upon the premises and drill at any time.
Jas. O. Troup, for Plaintiff.
Baldwin & Harrington, for Defendants.
We think that the merits of the action are with the plaintiff, and the injunction should be made perpetual.